[Cite as *Thompson v. Thompson*, 2013-Ohio-3752.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

| | | |
|---|---|---|
| CHERYL L. THOMPSON | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2013 CA 1 |
| v. | : | T.C. NO.   07DR226 |
| ROBERT R. THOMPSON | : | (Civil appeal from Common Pleas Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____30th____ day of ____August____, 2013.

· · · · · · · · · ·

LAURA KENDELL, Atty. Reg. No. 0072490, 262 James E. Bohanan Drive, Vandalia, Ohio 45377
  Attorney for Plaintiff-Appellee

CATHY J. WEITHMAN, Atty. Reg. No. 0002089 , 201 West Court Street, Urbana, Ohio 43078
  Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

  **{¶ 1}** Robert R. Thompson appeals from a judgment of the Champaign

County Court of Common Pleas, which ordered that an outstanding Ohio tax liability be shared equally by Mr. Thompson and his former wife, Cheryl L. Thompson, and credited each party for amounts already paid toward the debt. Mr. Thompson challenges the amount he was credited with having paid. For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} The current dispute involves tax obligations owed to the IRS and the State of Ohio from a business operated during the parties' marriage. The apportionment of the outstanding federal tax debt between the parties was resolved in proceedings related to the 2007 dissolution of their marriage. Pursuant to the separation agreement incorporated into the dissolution decree, the parties made payments on the IRS debt for several years after the dissolution of their marriage; Mrs. Thompson made monthly payments toward this debt to Mr. Thompson, and Mr. Thompson made the payments to the IRS.

{¶ 3} After the dissolution of their marriage, the Thompsons learned of an additional tax debt owed to the State. According to Mr. Thompson, the parties entered into an additional agreement with the State for the payment of that debt at a rate of $200 per month, and, in 2008, entered into a personal agreement that Mrs. Thompson would pay Mr. Thompson $100 per month toward this Ohio debt (in addition to the amount she was paying on the IRS obligation), which Mr. Thompson would then pay to the State..

{¶ 4} In July 2011, Mrs. Thompson stopped making payments to Mr. Thompson. In August 2011, Mr. Thompson filed a motion to find Mrs. Thompson in contempt. In March 2012, while the contempt motion was pending, Mr. Thompson filed a Motion to Determine State Tax Lien Payment; Mrs. Thompson construed this motion as "essentially a

60(B) motion," and she opposed it. In July 2012, the trial court held a hearing on the motions. In January 2013, the court concluded that the parties would share the Ohio tax liability equally and that Mr. Thompson's motion to hold Mrs. Thompson in contempt was "moot;" it also determined the amount that each party would be credited for amounts already paid toward the Ohio tax liability.

{¶ 5} Mr. Thompson appeals from the trial court's decision, raising one assignment of error. Mrs. Thompson did not file a brief.

THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT-APPELLANT SHOULD NOT BE CREDITED FOR HIS PAYMENTS TO THE STATE OF OHIO DELINQUENT TAX OBLIGATION.

{¶ 6} On appeal, Mr. Thompson challenges the court's failure to credit him for payments he purportedly made toward the Ohio tax liability; he does not challenge the trial court's division of the Ohio tax liability, the amount it credited Mrs. Thompson with having paid, or its finding that his motion for a finding of contempt related to the federal tax obligation was "moot." He contends that the State tax matter "should be sent back for a determination of payments [he made to the State] * * * which would offset the amount he owes on said obligation."

{¶ 7} On factual issues and questions of credibility of witnesses, appellate courts generally defer to the trial court's findings. "The 'rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these

observations in weighing the credibility of the proffered testimony.'" *In re J.Y.,* 2d Dist. Miami No. 07-CA-35, 2008-Ohio-3485, ¶ 33, quoting from *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶ 8}** The evidence presented at the hearing was as follows.

**{¶ 9}** In 2007, as a result of an IRS audit, the parties learned that they had an outstanding tax debt from previous years related to the operation of their business, Thompson Tire. The parties entered into an agreement with the IRS to pay $150 per month for ten years in satisfaction of this debt.

**{¶ 10}** In October 2007, the Thompsons filed a Petition for Dissolution of their marriage, to which they attached a separation agreement. The separation agreement provided that each party would be responsible for half of the amount owed to the IRS. This agreement was incorporated into the decree of dissolution, which was filed on December 27, 2007. Mrs. Thompson paid Mr. Thompson $75 per month toward this debt for several years thereafter, and he made the $150 per month payment to the IRS.

**{¶ 11}** Some time after the dissolution of the parties' marriage, they realized that they had an additional outstanding tax obligation to the State of Ohio in the amount of $49,141.53, also related to Thompson Tire for years during which they were married. According to Mr. Thompson, the IRS agent with whom they worked had informed them that the IRS's findings would be reported to the State, and that there may be additional tax consequences to the Thompsons; Mrs. Thompson claimed that she did not learn from the IRS that there could be State tax consequences and that she first learned about the Ohio tax liability after Mr. Thompson filed his motion for contempt.

{¶ 12} Mr. Thompson testified that he received Mrs. Thompson's checks for $175 regularly at the beginning of the month from 2008 until July 2011, and that he paid $200 to the State and $150 to the IRS each month. He stated that he continued to make these payments, in full, even when Mrs. Thompson stopped making her payments to him. However, he expressed uncertainty about when he became aware of the Ohio debt and began paying on it.

{¶ 13} An August 2010 letter from the Ohio Attorney General was admitted into evidence, which reflected an offer from the State to forego collection proceedings if the Thompsons paid $200 per month toward the outstanding debt for the period of September 2010 through August 2011. No evidence was presented that this agreement – or other agreements like it – had ever been executed. However, beginning in November 2008, Mrs. Thompson increased her monthly payments to Mr. Thompson from $75 to $175, as documented by her checking records. At the hearing, Mrs. Thompson claimed to have "no clue" why she had increased her payment to Mr. Thompson, but he claimed that the increased payment reflected their agreement to pay an additional $200 per month ($100 each) on the State tax liability.

{¶ 14} Both parties also testified that they had some tax refunds withheld by the IRS.

{¶ 15} Mrs. Thompson claimed that she did not know about the additional debt owed to the State until after Mr. Thompson filed his motion for contempt; thereafter, an acquaintance of Mrs. Thompson who worked at a "tax agency" did some research for her and uncovered a letter from the State to Mr. Thompson about the debt. Mrs. Thompson testified that this was the first time she saw any documentation of the debt to the State.

Although Mrs. Thompson claimed that she had been informed by an IRS agent several years earlier about the possibility of innocent spouse relief, she apparently did not pursue that possibility until after the contempt action was filed, when her acquaintance at the tax agency agreed to look into it for her.

{¶ 16}     Despite Mr. Thompson's claims at the hearing that he had been making payments to the State for several years, he did not present any evidence that he had entered into a payment plan with the State.  He also did not present any documentary evidence to support his testimony that he paid $200 per month to the State beginning in 2008, such as cancelled checks or a statement of the outstanding balance on the account.  By contrast, Mrs. Thompson provided documentation of the payments she made to Mr. Thompson, such as cancelled checks and bank statements, although she denied that any portion of these payments was for the State tax liability.

{¶ 17}     In its January 2, 2012 judgment entry, the trial court found that the alleged contempt for failure to pay $75 toward the IRS tax debt was "moot due to the parties' agreement."[1]   The court also found that the evidence was "insufficient" to conclude that the parties had entered into a formal payment agreement with the State regarding that tax debt. It found, however, that the Ohio tax debt should be shared equally by the parties, "in the spirit with their agreement" regarding the IRS debt and in light of the fact that the Thompson Tire business had been a marital asset.  The court credited Mrs. Thompson with $8,305.96 toward the IRS debt attributable to federal tax refunds that were intercepted from 2001 to

---

[1] Mr. Thompson has not appealed from this portion of the trial court's judgment.

2010, with having paid $7,651 toward the IRS debt prior to September 2011, and with having paid $3,300 to Mr. Thompson toward the State tax liability, based on 33 supplemental monthly payments of $100 to Mr. Thompson. The court found that Mr. Thompson had $1,200 in tax refunds intercepted by the IRS and had paid an additional $217 to the IRS, for a total credit toward the IRS liability of $1,417. The court found that Mr. Thompson had failed to provide any evidence that he had made any payments toward the State tax obligation.

{¶ 18} The trial court apparently credited Mr. Thompson's testimony that Mrs. Thompson had made payments to him toward the State tax liability – a claim that she denied – but did not credit Mr. Thompson's testimony that he had, in turn, made payments to the State. The court concluded that Mr. Thompson was not entitled to any credit for payments because he "failed to provide any evidence that he made payments to the State." By contrast, Mrs. Thompson's payments to Mr. Thompson were documented, although their purpose was in dispute. These determinations of credibility and facts were in the trial court's purview.

{¶ 19} Based on the record before us, we cannot conclude that the trial court abused its discretion in reaching the conclusion that it did. In the absence of any specific testimony or documentary evidence as to what amounts, if any, Mr. Thompson had paid, the trial court could have reasonably concluded that no credit was due or that the amount of any credit could not be accurately determined.

{¶ 20} The assignment of error is overruled.

{¶ 21} The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, P.J. and DONOVAN, J., concur.

Copies mailed to:

Laura Kendell
Cathy J. Weithman
Hon. Brett A. Gilbert